819 P.2d 1358

**Melvina MURPHY, Personal Representative of the Estate of Nancy Murphy, Deceased, Plaintiff–Appellee,**

v.

**TOMADA ENTERPRISES, INC., d/b/a Silver Spur Lounge, Defendant–Appellant.**

**No. 13167.**

Court of Appeals of New Mexico.

Sept. 27, 1991.

Bivins, J., filed dissenting opinion.

Richard Walker, Albuquerque, for plaintiff-appellee.

Lynn Isaacson, Mason, Rosebrough & Isaacson, P.A., Gallup, for defendant-appellant.

## OPINION

HARTZ, Judge.

Defendant appeals from a money judgment. Our calendar notice proposed summary affirmance. Defendant has responded with a memorandum in opposition. Not being persuaded by defendant's arguments, we affirm.

On November 13, 1987, Louise Bennett and Nancy Murphy, plaintiff's decedent, became intoxicated at defendant's tavern. At approximately 11:45 p.m. they left in a vehicle driven by Bennett. Shortly thereafter Murphy was fatally injured when Bennett drove into the rear of another vehicle. At a non-jury trial the court held defendant liable for twenty-five percent of the damages to Murphy's estate for serving Bennett alcoholic beverages after she was apparently and actually intoxicated. The court found that defendant was negligent when it continued to serve alcohol to Bennett, but that defendant did not act in reckless disregard of Murphy's safety.

The facts in this case are similar to those in *Baxter v. Noce*, 107 N.M. 48, 752 P.2d

240 (1988), in which our supreme court held that the tavernkeeper could be liable for an unlawful sale of alcohol to the driver when the sale was a proximate cause of the passenger's death, even though the passenger had himself become intoxicated at the tavern. Defendant would distinguish *Baxter* on the ground that the cause of action in that case predated the effective date of NMSA 1978, Section 41–11–1(B) (Repl. Pamp.1989). That provision reads:

> No person who was sold or served alcoholic beverages while intoxicated shall be entitled to collect any damages or obtain any other relief against the licensee who sold or served the alcoholic beverages unless the licensee is determined to have acted with gross negligence and reckless disregard for the safety of the person who purchased or was served the alcoholic beverages.

Defendant argues that this language requires denial of plaintiff's claim, because the court found that defendant did not act in reckless disregard of Murphy's safety.

■■■ We disagree with defendant's construction of the statute. Implicit in the language of subsection B is that the claim for damages be predicated on the intoxication of the patron. For example, if negligence by the licensee caused a portion of the tavern's roof to fall on the patron, the section surely would not protect the licensee against liability even if the patron had been served alcoholic beverages while intoxicated and the licensee had not acted with gross negligence or reckless disregard of the patron's safety in serving the beverages. We do not read Section B as restricting common-law causes of action not founded on the plaintiff's own intoxication. *Baxter* states, "[I]n Subsection B, the legislature recognized and imposed a duty on tavernkeepers to exercise care in serving alcohol to their patrons that did not exist at common law and was not as broadly established in *Lopez* [*v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982).]" *Id.* 107 N.M. at 50, 752 P.2d at 242. As we understand *Baxter*, subsection B was intended to expand upon common-law liability, not restrict it. This view comports with our statement in *Trujillo v. Trujillo*, 104 N.M. 379, 384, 721 P.2d 1310, 1315 (Ct.App.1986), that subsection B "creates a cause of action." We conclude that subsection B does not limit the common-law liability recognized in *Baxter*.

■■■ Thus, we construe subsection B as relating only to injury to a patron to the extent that it is proximately caused by the patron's own intoxication, not by the intoxication of another patron. Accordingly, we hold that a finding that defendant acted with gross negligence and reckless disregard for Murphy's safety was not necessary to establish liability. Liability of defendant could be predicated on defendant's serving liquor to Bennett. We affirm.

IT IS SO ORDERED.

CHAVEZ, J., concurs.

BIVINS, J., dissents and files an opinion.

BIVINS, Judge (dissenting).

In my opinion, the majority opinion misreads *Baxter v. Noce*, 107 N.M. 48, 752 P.2d 240 (1988), and fails to interpret NMSA 1978, Section 41–11–1(B) (Repl. Pamp.1989), in accordance with its plain meaning. That section provides:

> No person who was sold or served alcoholic beverages while intoxicated shall be entitled to collect any damages or obtain any other relief against the licensee who sold or served the alcoholic beverages unless the licensee is determined to have acted with gross negligence and reckless disregard for the safety of the person who purchased or was served the alcoholic beverages.

The term "no person," by its plain meaning, refers to any patron, including a passenger of a vehicle, as well as the driver. Subsection B recognizes a cause of action for patrons against tavernkeepers which did not heretofore exist at common law. *See Baxter*, 107 N.M. at 50, 752 P.2d at

242. It also sets the limitations on that cause of action: The licensee must have "acted with gross negligence and reckless disregard for the safety of the person who purchased or was served the alcoholic beverages." *Id.* The district court found defendant negligent in serving Bennett, but also found that defendant did not act in reckless disregard for Murphy's safety. Thus, absent a finding of gross negligence or reckless disregard, Murphy's estate cannot recover under Section 41–11–1(B).

In disagreeing with this construction of the statute, the majority says that "[i]mplicit in the language of subsection B is that the claim for damages be predicated on the intoxication of the patron." The majority opinion then goes on to provide an example where the negligence of the licensee caused a portion of the tavern's roof to fall on the patron, suggesting that subsection B would not protect the licensee against liability even if the patron had been served with alcoholic beverages while intoxicated and the licensee had not acted with gross negligence or reckless disregard. While it is unnecessary in this case to establish the contours of subsection B, suffice it that the plaintiff's decedent was intoxicated and her intoxication contributed to proximately cause the accident and her resulting death. The district court specifically apportioned thirty-five percent fault to Murphy's "alcoholism and voluntary intoxication on the night of the accident." Thus, the majority's attempt to analogize this to a situation in which intoxication was not a factor must fail.

The majority reads *Baxter* to say that subsection B was intended to expand upon common-law liability, not restrict it. I would agree to the extent subsection B recognizes a cause of action for patrons against tavernkeepers which did not exist at common law. Recognizing a cause of action does not, however, prevent the legislature from imposing restrictions upon it. In enacting subsection B, the legislature created a cause of action for a patron while at the same time limiting the cause of action to situations involving gross negligence or reckless disregard by the tavernkeeper toward the patron. Without a finding of gross negligence or reckless disregard, the tavernkeeper cannot be held liable to the patron under this statute.

Courts are bound to interpret statutes in accordance with their plain meaning so as to give effect to the legislative intent. *See, e.g., State v. Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990) (when statute contains clear and unambiguous language court must give effect to that language and refrain from further interpretation). By reading subsection B as the majority does, we ignore that rule of statutory construction.

I would reverse. Because the majority holds otherwise, I respectfully dissent. Ordinarily, a judge, disagreeing with a summary disposition, may request the case to be placed on a briefing calendar. I decline to do so because full briefing or examination of the transcript would not assist in reaching the issues.