**Certiorari Granted, August 10, 2010, No. 32,447**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-074**

**Filing Date: May 25, 2010**

**Docket No. 28,809**

**GINA MENDOZA, as Personal Representative
under the Wrongful Death Act of Michael
Mendoza, deceased, and F. MICHAEL
HART, as Personal Representative under
the Wrongful Death Act of Desiree Mendoza,
deceased,**

　　　　**Plaintiffs-Appellants,**

**v.**

**TAMAYA ENTERPRISES, INC.,
a federally chartered corporation,
d/b/a SANTA ANA STAR CASINO,**

　　　　**Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Nan G. Nash, District Judge**

Oldaker, Norris & Rockwell, LLC
Earl R. Norris
Albuquerque, NM

for Appellants

Rothstein, Donatelli, Hughes, Dahlstrom, Schoenburg & Bienvenu, LLP
Richard W. Hughes
Donna M. Connolly
Santa Fe, NM

for Appellee

**OPINION**

1

**ROBLES, Judge.**

**{1}** Gina Mendoza and Michael Hart (Plaintiffs), as personal representatives of Michael and Desiree Mendoza, brought a wrongful death action against Tamaya Enterprises, Inc. (Tamaya) in the Bernalillo County District Court. The complaint alleged that Tamaya sold alcohol to Michael and Desiree Mendoza at a social function despite their intoxication and, as a result of Tamaya's negligence, they were killed on their way home in a single, vehicle accident. The action was dismissed for failure to state a claim upon which relief can be granted. *See* Rule 1-012(B)(6) NMRA. On appeal, the issues presented are (1) whether Plaintiffs preserved their arguments below, (2) whether Plaintiffs may assert a claim based upon New Mexico's common law, and (3) whether the action must jurisdictionally be brought in the Santa Ana Pueblo Tribal Court. We reverse the district court and remand for further proceedings.

## I.     BACKGROUND

**{2}** Plaintiffs filed a complaint alleging that, on July 9, 2006, after attending a wedding reception held at the Santa Ana Star Casino, twenty-three-year-old Michael and twenty-two-year-old Desiree (Decedents) were involved in a one-vehicle rollover accident that claimed their lives. The complaint alleges that Tamaya, through their agents, servants, or employees, knew or should have known from the circumstances that Decedents were intoxicated, yet continued to sell and serve alcohol, notwithstanding their apparent intoxication. Further, the serving and sale of alcohol was negligent and in reckless disregard for Decedents' safety and was the proximate cause of their deaths. At the time of the accident, Decedents' cousin was also in the vehicle and, although he was injured, he is not a party to this appeal. A subsequent investigation by New Mexico State Police was unable to determine who was driving the vehicle at the time of the accident. Decedents' cousin, who suffered a head injury, has given conflicting accounts as to which Decedent was driving.

**{3}** Tamaya moved to dismiss Plaintiffs' complaint for failure to state a claim upon which relief could be granted and filed a memorandum in support of their motion, in which they argued that an over-served patron had no common law right to recover from a tavernkeeper. Following a hearing on the motion, the action was dismissed.

## II.     DISCUSSION

**{4}** On appeal, Tamaya argues that Plaintiffs only asserted Decedents were over-served patrons and never argued injured, third-party liability. Moreover, Tamaya contends that there is no common law claim for over-served patrons. Finally, Tamaya encourages affirmance because New Mexico law provides that sales of alcohol on Santa Ana Pueblo land must be governed by Pueblo law, and actions should therefore be brought in tribal court. Additionally, Tamaya argues that the tribal ordinance itself requires enforcement in tribal court.

2

**{5}**     A district court's decision to dismiss a case under Rule 1-012(B)(6) is reviewed de novo. *Chavez v. Desert Eagle Distrib. Co. of N.M., LLC*, 2007-NMCA-018, ¶ 5, 141 N.M. 116, 151 P.3d 77 (filed 2006). "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted). "Dismissal on [Rule 1-0]12(B)(6) grounds is appropriate only if [the p]laintiffs are not entitled to recover under any theory of the facts alleged in their complaint." *Callahan v. N.M. Fed'n of Teachers-TVI*, 2006-NMSC-010, ¶ 4, 139 N.M. 201, 131 P.3d 51. We review the evidence in the light most favorable to the party resisting the motion. *Porter v. Ortiz*, 100 N.M. 58, 59, 665 P.2d 1149, 1150 (Ct. App. 1983).

## A.     New Mexico's Common Law Dramshop Liability

**{6}**     Before we address the issues on appeal, we will provide some background context for our discussion. In New Mexico, the Legislature has prohibited the providing or selling of alcoholic beverages to an intoxicated person when "the person selling, serving, procuring or aiding in procurement, knows or has reason to know that he is selling, serving, procuring or aiding in procurement of alcoholic beverages for a person that is intoxicated." NMSA 1978, § 60-7A-16 (1993). The Legislature has further outlined when an injured, third party may recover from a licensed provider of alcohol who over serves a patron, and the third party is subsequently injured by that patron. *See* NMSA 1978, § 41-11-1(A) (1983) (amended 1986) (providing civil liability for licensees that provide alcohol to an intoxicated individual when it is reasonably apparent that the individual is intoxicated, and the licensee knew from the circumstances that the receiver of the alcohol was intoxicated).

**{7}**     Prior to the enactment of Section 41-11-1 in 1983, our Supreme Court recognized for the first time that a third party who was injured by an intoxicated driver had a cause of action against the tavernkeeper who illegally served alcohol to the intoxicated driver. *See Lopez v. Maez*, 98 N.M. 625, 628, 651 P.2d 1269, 1272 (1982). In reaching this conclusion, the Court analyzed the history of New Mexico dramshop liability. The Court noted that, although it was illegal to sell alcohol to an individual who was intoxicated, it previously had not been recognized as a tort. *Id.* "The reason generally given for this rule was that the proximate cause of the injury was not the furnishing of the liquor, but the drinking of it." *Id.* However, the Court observed that some jurisdictions imposed liability on vendors of alcohol by creating dramshop civil damage statutes, whereas other jurisdictions imposed liability under common law negligence principles. *Id.* at 628-29, 651 P.2d at 1272-73. Although New Mexico did not have a dramshop civil damage statute at the time, the Court concluded that the injured, third-party plaintiff could establish the existence of a duty that ran from the tavernkeeper by showing a violation of a regulation or statute. *Id.* at 631, 651 P.2d at 1275. The Court's ability to change common law doctrine was within its unique province because, as a creation of the judiciary, the common law should adapt if and when the judiciary determined that a past decision had reached a point of obsolescence or had become unwise. *Id.* at 629, 651 P.2d at 1273 ("A common law doctrine which developed in the horse and buggy days may be out of tune with today's society. The serious danger to the public caused by drunken drivers operating automobiles on public roadways is now a

3

matter of common knowledge."). In response to the increasing frequency of accidents involving drunk drivers and the reasonable foreseeability of the consequence of serving alcohol to an individual who is or was intoxicated and may end up driving, the Court determined that

> a person may be subject to liability if he or she breaches his or her duty by violating a statute or regulation which prohibits the selling or serving of alcoholic liquor to an intoxicated person; the breach of which is found to be the proximate cause of injuries to a third party.

*Id.* at 632, 651 P.2d at 1276.

**{8}** Following New Mexico's judicial recognition of dramshop liability, the Legislature enacted Section 41-11-1, which limited the scope of dramshop liability. *Baxter v. Noce (Baxter II)*, 107 N.M. 48, 52, 752 P.2d 240, 244 (1988) (Stowers, J., dissenting). In the case of *Trujillo v. Trujillo*, this Court concluded that the estate of an intoxicated patron had no cause of action against a tavernkeeper for injuries. 104 N.M. 379, 382, 721 P.2d 1310, 1313 (Ct. App. 1986). There, an intoxicated individual had wandered by foot onto the highway where he was fatally struck. *Id.* at 380, 721 P.2d at 1311. We concluded that, in *Lopez*, the Supreme Court had determined that the statute at issue was enacted for the benefit of the public, the violation of which was a breach of duty to members of the public. *Trujillo*, 104 N.M. at 380-82, 721 P.2d at 1311-13. After noting that *Lopez* did not indicate whether the patron himself was to be included in the public group that the statute sought to protect, we looked to policy considerations to define the scope of the duty and determine whether a patron could have a recognized cause of action. *Trujillo*, 104 N.M. at 381, 721 P.2d at 1312. We concluded that a common law duty should not be imposed on a tavernkeeper that runs to an intoxicated patron because it would allow recovery by someone who had full knowledge of the possible results of their voluntary intoxication, and it would allow him or her to benefit by their wrongful act. *Id.* at 382, 721 P.2d at 1313.

**{9}** In 1985, the Legislature amended Section 41-11-1 to include a statutory right for an injured patron to collect for damages and obtain relief against a licensee who sold or served alcoholic beverages if it was determined that the licensee acted with gross negligence and a reckless disregard for the safety of the patron in question. *See* § 41-11-1(B); *Trujillo*, 104 N.M. at 383-84, 721 P.2d at 1315-16. A little over two months before that amendment became effective, the decedent in *Baxter* lost his life. 107 N.M. at 50, 752 P.2d at 242. In *Baxter II*, the estate of Baxter, who was a passenger in the vehicle, was attempting a wrongful death action against the tavernkeeper who had served both the driver and the passenger when it was alleged that it was reasonably apparent that both were intoxicated. The district court noted that Baxter was a third party in relation to the tavernkeeper, and his death may have been the proximate result of the driver operating the motor vehicle while intoxicated after possibly being illegally served. *Id.* at 48-49, 752 P.2d at 240-41. This Court, relying on *Trujillo*, reversed the district court and concluded that the plaintiff had no cause of action. Our Supreme Court reversed this Court. *Id.* at 49, 752 P.2d at 241.

4

**{10}** In *Baxter II*, the Supreme Court observed that Section 41-11-1(B), which provided for a duty on tavernkeepers to exercise care in serving alcohol to patrons, did not exist at common law, was not established by *Lopez*, and did not become effective until two months after Baxter's death. *Baxter*, 107 N.M. at 50, 752 P.2d at 242. The Court concluded that "[b]ecause Baxter would have had no direct cause of action as a patron, the estate must establish that Baxter was an injured third party in relation to the respondents before it can recover." *Id.* After concluding that Baxter's estate may be able to demonstrate that the respondents served the driver in violation of Section 41-11-1(A), our Supreme Court examined the logic of this Court. Our Supreme Court stated that "the [C]ourt of [A]ppeals overlooked the impact of [the] adoption of comparative negligence when it held that . . . Baxter's voluntary intoxication was a complete bar to recovery." *Baxter II*, 107 N.M. at 50, 752 P.2d at 242. Although the defense of complicity had been recognized by some jurisdictions, "[t]he opinions in those cases . . . fail[ed] to recognize that the comparative negligence doctrine readily embraces within it the defense concept that [the] plaintiff should not profit from his own wrong." *Id.* at 51, 752 P.2d 243. We now turn to the application of the law to this case.

**B.      Preservation**

**{11}** Tamaya argues that Plaintiffs failed to argue an injured, third-party common law claim. We disagree. In their complaint, Plaintiffs set out a claim that alleged Tamaya's negligence in serving Decedents as a proximate cause of the accident. In their response to Tamaya's motion to dismiss, Plaintiffs again argued the elements of negligence and attached a copy of the Pueblo of Santa Ana Liquor Ordinance (Ordinance), which provides that it is generally prohibited to sell alcohol to an intoxicated person. 71 Fed. Reg. 17,903-01 § 184 (Apr. 7, 2006). At the hearing on the motion, Plaintiffs brought the Ordinance to the attention of the district court and argued that the Ordinance created a duty to Plaintiffs. Moreover, Tamaya conceded that the Ordinance did in fact create a duty to refrain from selling alcohol to intoxicated persons. However, Tamaya argued that the scope of the duty did not extend to patrons who were injured as a result of their own intoxication. Essentially, Tamaya argued that both Decedents were patrons and that, although Tamaya had a duty to not serve them when they became intoxicated, there was no cause of action that existed that would allow Plaintiffs to recover. Therefore, Tamaya argued that Plaintiffs had not made a claim upon which relief could be granted.

**{12}** At the hearing, Plaintiffs made the following argument:

> So, initially, what we have is three people who were all at the casino, all were overserved alcohol, on their way back home suffered a single-car collision in which two of the occupants died, third passenger survived. One of the deceased passengers was believed to be the driver, but we're not entirely clear on which one.
>
> To place the issue in terms that defense counsel has put it, defense counsel's argument is that a patron is not owed a duty if the patron becomes voluntarily intoxicated, under New Mexico law. Here we have a patron and

5

two passengers.  And even under New Mexico law, the deceased and/or injured passenger would have a claim, both against the tavernkeeper and the driver of the vehicle, due to the overserving of alcohol.

**{13}**    This is a correct statement of the law, and it alleges a third-party claim on behalf of whichever Decedent was not driving.  *See generally Baxter II*, 107 N.M. at 52, 752 P.2d at 244 (finding injured, third-party common law dramshop liability where the passenger in the vehicle of an intoxicated driver was a third-party relative to the tavernkeeper).  In response to this argument, Tamaya stated that Plaintiffs' complaint did not allege who was driving the vehicle at the time of the accident.  Furthermore, because the complaint asserted that the sale of alcoholic beverages to Decedents was the proximate cause of their deaths, Plaintiffs were "clearly making a patron complaint in their complaint."  Tamaya then argued to the district court that the allegations Plaintiffs were making at the hearing were different from the allegations made in the complaint.  We note several points.

**{14}**    First, at the hearing on the motion to dismiss in response to Plaintiffs' argument, Tamaya specifically argued to the district court that Plaintiffs' complaint had only made a patron claim, and the argument Plaintiffs were making at the hearing was different from a patron claim.  The question we must answer on appeal is whether Plaintiffs argued a third-party claim.  *See Gulf Ins. Co. v. Cottone*, 2006-NMCA-150, ¶ 18, 140 N.M. 728, 148 P.3d 814 (concluding that the plaintiff's theory of the case evolved in response to the defendants' arguments and, without condoning the plaintiff's pleading tactics, the plaintiff had preserved the issue at the hearing on the motion to dismiss).  As noted above, Plaintiffs argued to the district court that the passengers had a cause of action under New Mexico law.  It defies logic for Tamaya to argue to the district court that they were somehow prejudiced by Plaintiffs' making an argument that was not "a patron complaint in their complaint" and now argue on appeal that Plaintiffs never made an argument other than a patron claim.

**{15}**    Second, our examination of the complaint leads us to conclude that the allegations stated a claim for negligence.  *See Herrera*, 2003-NMSC-018, ¶ 6 (noting that negligence claims require the existence of a duty and a breach of that duty with the breach being the proximate cause of a plaintiff's damages).  The Rules of Civil Procedure disfavor looking upon pleadings as tests of skill where a single misstep could bar recovery.  *Hambaugh v. Peoples*, 75 N.M. 144, 153, 401 P.2d 777, 782 (1965).  Our cases have recognized that pleadings should be generally stated, plain, and should promote the agenda of justice.  *See* Rule 1-008(E)(1) NMRA ("Each averment of a pleading shall be simple, concise and direct."); *Morrison v. Wyrsch*, 93 N.M. 556, 559, 603 P.2d 295, 298 (1979) ("All pleadings should be construed so as to do substantial justice[.]"); *Sanchez v. City of Belen*, 98 N.M. 57, 60, 644 P.2d 1046, 1049 (Ct. App. 1982) ("The general policy on pleadings require that an adjudication on the merits rather than technicalities of procedures and form shall determine the rights of the litigants.").  Additionally, amendments to pleadings are generally favored over dismissal.  *Martinez v. Research Park, Inc.*, 75 N.M. 672, 679, 410 P.2d 200, 205 (1966), *overruled on other grounds by Lakeview Invs., Inc. v. Alamogordo Lake Vill., Inc.*, 86 N.M. 151, 155, 520 P.2d 1096, 1100 (1974).

6

**{16}** Third, Tamaya's assertion on appeal is that Plaintiffs are "now rais[ing] in this Court as their basis for reversal[,] arguments that they never presented to the district court . . . [and a]t no point did they assert the *injured third[-]party* common law claim." This argument invokes preservation analysis and does not attack the sufficiency of the pleadings under Rule 1-008. We conclude that Plaintiffs did argue and thereby preserve that New Mexico law recognizes an injured, third-party common law claim against a tavernkeeper, who serves or over serves an intoxicated individual and is proximately injured by that individual. Furthermore, Plaintiffs argued to the district court that one of the Decedents was not driving and was entitled to the common law claim.

## C.  Injured, Third-Party Common Law Dramshop Liability

**{17}** Tamaya is licensed by the Pueblo of Santa Ana to sell and serve alcoholic beverages at the Santa Ana Star Casino. Both parties agree that Section 41-11-1 does not apply to Tamaya because the Santa Anna Star Casino is not a licensee under New Mexico's Liquor Control Act (Act) and because the Act does not apply to Santa Ana Pueblo. *See* NMSA 1978, § 60-3A-5(D) (1995) (noting that nothing in the Act applies to "the sale, service, possession or public consumption of alcoholic beverages by any person within the boundaries of lands over which an Indian nation, tribe or pueblo has jurisdiction if the alcoholic beverages are purchased from New Mexico wholesalers and if the sale, service, possession or public consumption of alcoholic beverages is authorized by the laws of the Indian nation, tribe or pueblo having jurisdiction over those lands and is consistent with the ordinance of the Indian nation, tribe or pueblo certified by the secretary of the interior and published in the federal register according to the laws of the United States").

**{18}** Under the Compact Negotiation Act (Compact), NMSA 1978, Sections 11-13A-1 to -5 (1999, as amended through 2007), the State of New Mexico and the Pueblo of Santa Ana negotiated a gaming agreement. *Doe v. Santa Clara Pueblo*, 2007-NMSC-008, ¶ 6, 141 N.M. 269, 154 P.3d 644. Section 4(B)(15)(a) of the Compact provides that the Pueblo will adopt laws and enact provisions that prohibit employees from selling, serving, giving, or delivering alcoholic beverages to intoxicated individuals. Section 8(A) of the Compact provides that the "safety and protection of visitors . . . is a priority of the Tribe, and it is the purpose of this Section to assure that any such persons who suffer . . . damage proximately caused by the conduct of the [g]aming [e]nterprise have an effective remedy." The section further notes that the Tribe agrees to a limited waiver of its immunity from suit, allows claims to be brought in state district court, and provides that New Mexico law shall govern the substantive rights of the claimant. Compact, § 8(A), (D). In adherence to the Compact, the Pueblo of Santa Ana adopted the Ordinance, which became effective three months before the accident in the present case. *See* 71 Fed. Reg. 17,903-01. Section 101(D) of the Ordinance states:

> It is the policy of the Tribal Council that the introduction, sale and consumption of alcoholic beverages within the Santa Ana Indian Reservation be carefully regulated so as to protect the public health, safety and welfare, and that licensees be made fully accountable for violations of conditions of their licenses and the consequences thereof.

7

**{19}** Moreover, Section 184 states that "[n]o person shall sell any alcoholic beverage to a person who the seller has reason to believe is intoxicated or who the seller has reason to believe intends to provide such alcoholic beverage to an intoxicated person." In Tamaya's reply to Plaintiffs' response opposing the motion to dismiss, Tamaya acknowledged that it had a duty under the Ordinance to refrain from selling alcoholic beverages to individuals that were intoxicated. We conclude that Plaintiffs did allege one of Decedents was a passenger, and there is a recognized common law cause of action for an injured, third-party passenger. Although the complaint does not allege who the passenger was, such an inquiry is a question of fact, and Tamaya never moved for a more definite statement in the complaint. *See* Rule 1-012(E) ("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired."). The basic purpose of a pleading is to give opposing parties fair notice of the claims and defenses against them, as well as the grounds upon which they are based. *Bronstein v. Biava*, 114 N.M. 351, 353, 838 P.2d 968, 970 (1992). The pleadings in the present case alleged that Decedents were in the vehicle together at the time of the accident. This was sufficient in providing Tamaya with notice for the purposes of the Rules of Civil Procedure. The jury may decide who was the passenger.

### D.    Injured Patron Common Law Dramshop Liability

**{20}** Plaintiffs also contend that the estate of the driver of the vehicle should have a common law cause of action against Tamaya. An analysis of New Mexico case law and the governing Ordinances and Compact lead us to a agree with Plaintiffs. We begin by noting that *Baxter* implicitly overruled *Trujillo*. The reasoning in *Trujillo* that prevented the estate of the plaintiff from recovering against the respondents rested largely on this Court's examination of "separate policy considerations to define the scope of the duty." 104 N.M. at 381, 721 P.2d at 1312. We concluded that the Supreme Court did not intend for patrons to be included in the public group that a tavernkeeper owes a duty to. *Id.* Our reasoning focused on preventing individuals from wrongly benefitting or recovering from their own wrongful acts. *Id.* at 382, 721 P.2d at 1313. This sentiment was further developed in *Baxter v. Noce (Baxter I)*, 107 N.M. 53, 752 P.2d 245 (Ct. App. 1987) (Garcia, J., specially concurring). In *Baxter I*, we held:

> No reasonable *unintoxicated* person would allow himself to become a passenger in a car with an intoxicated driver. By voluntarily doing so, Baxter exposed himself to a dangerous situation, as did the intoxicated patron in *Trujillo*. No reasonable mind would question that Baxter's intoxication was a factor in his exercising such poor judgment.

*Baxter I*, 107 N.M. at 55, 752 P.2d at 247. In *Baxter I*, Judge Garcia stated in his special concurrence that, "[in *Trujillo*, w]e felt that allowing an adult, intoxicated patron recovery against the tavernkeeper would savor too much of allowing a person to benefit by his or her own wrongful act. The same line of reasoning applies here." *Baxter I*, 107 N.M. at 55-56, 752 P.2d at 247-48 (internal quotation marks and citation omitted). This Court ultimately

8

concluded that "Baxter's own intoxication was a proximate cause of his death" and precluded recovery from the defendant dramshop. *Id*. at 55, 752 P.2d at 247.

**{21}** As previously noted, in response to this Court's opinion in *Baxter I*, our Supreme Court stated: "We are concerned, however, that (as Baxter claims) the [C]ourt of [A]ppeals overlooked the impact of our adoption of comparative negligence when it held as a matter of law that Baxter's voluntary intoxication was a complete bar to recovery." *Baxter II*, 107 N.M. at 50, 752 P.2d at 242. The adoption of comparative negligence supplanted the all-or-nothing bar of contributory negligence and doctrines, such as complicity, assumption of risk, and other defenses rooted in the claimant's negligence, were subjugated to comparative negligence analysis. *Id.* at 51, 752 P.2d at 243. We therefore conclude that our Supreme Court has squarely addressed injured, third-party dramshop liability but not that of an injured patron. Moreover, this Court's previous analysis of the issue in *Trujillo* did not consider that the comparative negligence doctrine contains within it the defense concept that the plaintiffs should not profit from their own wrong actions. *Baxter II*, 107 N.M. at 51, 752 P.2d at 243. Development of this line of cases stopped with the Legislature's enactment of Section 41-11-1(B) in the mid-1980s.

**{22}** We next turn to the establishment of a duty under the Ordinance. As stated previously, Tamaya conceded below that the Ordinance created a duty by prohibiting the sale of alcohol to intoxicated persons under Pueblo law. *See* 71 Fed. Reg. 17,903-01, § 184 ("No person shall sell any alcoholic beverage to a person who the seller has reason to believe is intoxicated or who the seller has reason to believe intends to provide such alcoholic beverage to an intoxicated person."). The issue, as Tamaya phrases it, is the scope of the duty imposed by the prohibition and whether the duty extends to an injured patron. We conclude that the existence of a duty to the public is established by the Ordinance's prohibitions. We further hold that the Compact's stated policy concerns, focusing on the protection of visitors, lead us to conclude that the scope of Tamaya's duty should extend to patrons. *See* Compact, § 8(A) ("The safety and protection of visitors to a [g]aming [f]acility is a priority of the Tribe, and it is the purpose of this [s]ection to assure that any such persons who suffer bodily injury or property damage proximately caused by the conduct of the [g]aming [e]nterprise have an effective remedy for obtaining fair and just compensation."). Under comparative negligence principles, the question of amount of fault, complicity, or assumption of risk is given to the province of the jury. *See Baxter II*, 107 N.M. at 51, 752 P.2d at 243.

### E.     Jurisdiction

**{23}** Tamaya briefly argues that Plaintiffs' claims are exclusively governed by Santa Ana Pueblo law and may only be heard in Santa Ana Pueblo Tribal Court. Citing to Section 60-3A-5(D) and *Chavez*, Tamaya claims that actions regarding the sale of alcohol on tribal lands may not be brought in state district court. However, Section 60-3A-5(D) simply exempts the Act from applying to Indian nations, tribes, or pueblos. Moreover, *Chavez* concerned an injured motorist who was pursuing a negligence claim against alcohol distributors that supplied alcohol to a casino and not the casino itself. 2007-NMCA-018, ¶ 1.

**{24}** State courts have jurisdiction over personal injury actions that arise from negligent acts. *Doe*, 2007-NMSC-008, ¶ 8 (stating that "for the limited purpose of personal injury actions involving visitor safety, the parties to the Compact agreed to state court jurisdiction"). Although Section 191 of the Ordinance provides that all actions that pertain to the violation of the Ordinance shall be brought in tribal court, the immediate action is for damages based on wrongful death through negligence. The Ordinance simply establishes the existence of a duty not to sell alcohol to intoxicated individuals. *See Lopez*, 98 N.M. at 631, 651 P.2d at 1275 (recognizing that the existence of a duty may be established by the enactment of a regulation or statute). Section 8 of the Compact acknowledges that the Pueblo waives its defense of sovereign immunity in connection with claims for compensatory damages for bodily injury or property damage, and any claim may be brought in state district court. *Doe*, 2007-NMSC-008, ¶ 8. This type of action was specifically contemplated and listed in the Compact as a cause that would allow for a visitor to proceed in district court with respect to a claim for bodily injury. The district court had jurisdiction over the parties as well as the subject matter of this action.

## III.   CONCLUSION

**{25}** Based on the foregoing analysis, we remand for further proceedings.

**{26}   IT IS SO ORDERED.**

 

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for *Mendoza v. Tamaya Enters., Inc.*, Docket No. 28,809**

| | |
|---|---|
| **AE** | **APPEAL & ERROR** |
| AE-PA | Preservation of Issues for Appeal |
| **CP** | **CIVIL PROCEDURE** |
| CP-FC | Failure to State a Claim |
| **GV** | **GOVERNMENT** |
| GV-LA | Liquor Control Act |
| **IL** | **INDIAN LAW** |

IL-TC                    Tribal Court Jurisdiction
IL-TJ                    Tribal and State Authority and Jurisdiction

**TR**                     **TORTS**
TR-TK                   Tavernkeeper's and Social Host's Liability